## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| SASKIA BRYAN and ANDREW FISKE,<br>Individually and on behalf of all others similarly situated. | )<br>)<br>) | |
| Plaintiffs, | )<br>) | |
| v. | )<br>) | No.: 15-cv-10541 |
| VOLKSWAGEN GROUP OF AMERICA, INC.,<br>VOLKSWAGEN AG, AUDI OF AMERICA, INC.,<br>and ROBERT BOSCH GMBH, INC., | )<br>)<br>)<br>) | |
| Defendants. | )<br>) | |

## CLASS ACTION COMPLAINT

Plaintiffs Saskia Brian and Andrew Fiske, on behalf of themselves and on behalf of all persons similarly situated, allege the following:

## FACTUAL ALLEGATIONS

1.     This action is about an unprecedented fraud perpetrated by Defendants Volkswagen Group of America, Inc. Volkswagen AG and Audi of America, Inc. (collectively "Volkswagen") along with Robert Bosch GMBH ("Bosch") (collectively the "Defendants").

2.     Since 2009, over 482,000 vehicles sold by Volkswagen as "CleanDiesel" vehicles in the United States were sold with a "defeat device" designed to trick regulators by masking these vehicles' illegally high engine emissions.  The defeat device is a software program deliberately designed by the Defendants to turn on a vehicle's emission control system only when the vehicle is undergoing emissions testing.  At all other times, the emissions control system is switched off, allowing the engine to run more powerfully and fuel-efficiently, while spewing massive amounts of pollutants, most importantly nitrogen oxide, into the atmosphere.

1

3.      Nitrogen oxide is a dangerous pollutant that plays a major role in producing low-level ozone pollution known as smog.  Pollution caused by nitrogen oxide causes health problems including chest pain, coughing, throat irritation, and congestion.  It can worsen bronchitis, emphysema, and asthma, and can contribute to lung cancer.  It is especially dangerous to children.  Some reports have suggested the increased emissions from Volkswagen's vehicles could have caused over one hundred deaths.[1]

4.      As detailed in the Environmental Protection Agency's ("EPA") September 18, 2015 Notice of Violation ("NOV"), Defendants' defeat devices violated United States laws and regulations.  The Clean Air Act sets strict emissions standards for pollutants like nitrogen oxide.  These standards are enforced by the EPA, which requires that every vehicle sold in the United States be certified to ensure it satisfies applicable emissions standards.  In order to obtain certification, car manufacturers must certify that their vehicles conform to published specifications and that they are not equipped with any defeat devices.  Defeat devices are objects designed to reduce the effectiveness of a vehicle's emission control systems.  Vehicles equipped with a defeat device cannot be certified under federal law.

5.      Volkswagen lied repeatedly in its applications to the EPA for certification of its "CleanDiesel" vehicles.  Volkswagen falsely stated that the vehicles met EPA emissions standards, when, in fact, they released up to forty times more pollutants than allowed under the law.  And the Volkswagen falsely claimed that the vehicles did not contain defeat devices when Volkswagen was fully aware that the vehicles did contain defeat devices.  In doing so,

---

[1] Margot Sanger-Katz and John Schwartz. *How Many Deaths Did Volkswagen's Deception Cause in the U.S.?*, New York Times (Sept. 28, 2015), http://www.nytimes.com/2015/09/29/upshot/how-many-deaths-did-volkswagens-deception-cause-in-us.html?_r=0.

Volkswagen violated the Clean Air Act, defrauded its customers, and engaged in unfair competition under state and federal law.

6.      Volkswagen installed illegal defeat devices on the following vehicles (the "Affected Vehicles"): Audi A3 (model years 2010 – 2015), Audi A6 Quatro (model year 2016), Audi A7 Qattro (model year 2016), Audi A8 (model year 2016), Audi A8L (model year 2016), Audi Q5 (model year 2016), VW Beetle (model years 2012 – 2015), VW Beetle Convertible (model years 2012 – 2015), VW Golf (model years 2010 – 2015), VW Golf Sportswagen (model year 2015), VW Jetta (model years 2009 – 2015), VW Jetta Sportswagen (model years 2009 – 2014), VW Touareg (model year 2014), and VW Passat (model years 2012 – 2015).  Discovery may reveal that additional vehicle models and model years are also Affected Vehicles.

7.      The defeat devices that Volkswagen installed in the Affected Vehicles worked by means of a piece of software that detected when a vehicle was undergoing emissions testing. When it detected such a test, the defeat device switched on the vehicle's full emissions control systems, reducing the vehicle's performance by limiting acceleration, torque, and fuel efficiency in order to cut down on emissions.  As a result, the Affected Vehicles gave the appearance of conforming with emissions standards.

8.      When the defeat device was not activated— *i.e.*, under ordinary driving conditions—the vehicle ran at full power.  The Affected Vehicles then delivered Volkswagen's promised fuel efficiency and performance, but at the expense of Volkswagen's "clean" emissions claims.  Under ordinary conditions, the Affected Vehicles emitted between 10 and 40 times as much pollution into the environment as allowed under the Clean Air Act.

9.      Volkswagen has admitted that the Affected Vehicles contained the defeat device and that it installed defeat devices in roughly 11 million vehicles around the world.  At a press

conference on Monday, September 22, 2015, the head of Volkswagen's U.S. operations, Michael Horn, stated "Our company was dishonest with the EPA, and the California Air Resources Board and with all of you . . . [w]e've totally screwed up."

10.     Bosch, a large automobile parts supplier, provided Volkswagen with the defeat device Volkswagen used in the 11 million defective vehicles.  Bosch sold Volkswagen the emissions control systems containing the defeat device that Volkswagen incorporated into the Affected Vehicles.

11.     In doing so, Bosch conspired with Volkswagen in order to boost the sales of Volkswagen's diesel automobiles.  In a 2007 letter, Bosch informed Volkswagen that using the Bosch-provided defeat device in Volkswagen vehicles would constitute an "offense." Nevertheless, Bosch proceeded to deliver millions of units of its defeat device to Volkswagen knowing that Volkswagen intended to commit the very "offense" Bosch had pointed to.

12.     On information and belief, Bosch continued to work with Volkswagen as Volkswagen incorporated the Bosch-supplied defeat device into an expanding list of Volkswagen and Audi models.

13.     **Volkswagen** spent millions marketing its diesel models as fuel efficient cars with extraordinarily low emissions.  For example, in one widely-aired television commercial, a woman held a white scarf underneath one vehicle's tailpipe to demonstrate how clean the emissions were from the diesel engine.[2]

---

[2] *See* Jad Mouawad & Sydney Ember. *VW's Pitch to Americans Relied on Fun and Fantasy*. New York Times (Sept. 27, 2015),  http://www.nytimes.com/2015/09/28/business/media/vws-pitch-to-americans-relied-on-fun-and-fantasy.html?ref=business.

14.     In its marketing materials, **Volkswagen** repeatedly emphasized that the diesel cars were "green" and "clean" vehicles.  In fact, **Volkswagen** used the term "CleanDiesel" to market the vehicles at issue in this action

15.     Volkswagen boasted on its website that the diesel Audi A3 and diesel VW Jetta were named the 2010 Green Car of the Year and the 2009 Green Car of the Year respectively.

16.     **Volkswagen** also supported and directed a website to promote its "CleanDiesel" technology, www.clearlybetterdiesel.org, which states that **Volkswagen**'s technology reduces smog and "meets the highest standards in all 50 states, thanks to . . . innovative engine technology that burns cleaner."

17.     **Volkswagen** also boasted that its "CleanDiesel" vehicles were fuel efficient, promising 40 miles per gallon of fuel and the ability to travel over 800 miles on a tank of fuel.[3]

18.     **Volkswagen** promoted the powerful performance of its "CleanDiesel" vehicles to counter the common perception that diesel vehicles were slow and sluggish.[4]

19.     **Volkswagen** charged a substantial premium for the Affected Vehicles. "CleanDiesel" models of Volkswagen and Audi cars cost between $2,000 and $7,000 more than corresponding non-diesel models.

20.     Defendants' actions have injured Plaintiffs and Class members.  Volkswagen has been ordered by the EPA to recall the Affected Vehicles and repair them so that that the vehicles comply with EPA emissions standards.  However, Volkswagen will not be able to comply with EPA standards without markedly degrading the Affected Vehicles' performance, especially with

---

[3] Examples of commercials touting the fuel efficiency of Volkswagen diesels are available at https://www.youtube.com/watch?v=a2CNHVXvNRo and https://www.youtube.com/watch?v=wj3if2gRWYE (last visited September 22, 2015).
[4] *See* Jad Mouawad & Sydney Ember. *VW's Pitch to Americans Relied on Fun and Fantasy.* New York Times (Sept. 27, 2015),  http://www.nytimes.com/2015/09/28/business/media/vws-pitch-to-americans-relied-on-fun-and-fantasy.html?ref=business.

respect to the vehicles' horsepower and efficiency.  As a result, even if Volkswagen is able to make Plaintiffs' and Class member's Affected Vehicles EPA-compliant, Plaintiffs' and Class members will still suffer actual harm and damages because their vehicles will be slower, perform worse, and consume more gas than they did when they were purchased and advertised.  This will necessarily diminish the value of every Affected Vehicle and will cause the owners of the Affected Vehicles to pay more for fuel while using the vehicle.

21.     In addition, Plaintiffs' and Class members' vehicles will suffer from a significant diminution in value by being made EPA compliant because Plaintiffs and Class members overpaid for their vehicles and will be forced to pay much more to fuel their less efficient vehicles.

22.     As a result of Defendants' unfair, deceptive, and fraudulent business practices, and their failure to disclose that under normal operating conditions the Affected Vehicles emit forty times the allowed levels of pollution, owners and lessees of the Affected Vehicles have suffered losses in money and property.  Had Plaintiffs and Class members known of the "defeat device" at the time they purchased or leased their Affected Vehicles, they would not have purchased or leased those vehicles, or would have been willing to pay substantially less for the vehicles.  Moreover, when and if Volkswagen recalls the Affected Vehicles and degrades the "CleanDiesel" engine performance in order to make the Affected Vehicles compliant with EPA standards, Plaintiffs and Class members will be required to spend more money on fuel and will not obtain the performance characteristics of their vehicles when purchased.  And the Affected Vehicles will necessarily be worth less in the used marketplace because of their decrease in performance and efficiency, so the owners will not be able to recoup the expected value of these vehicles in the future.

6

23.     Plaintiffs bring this action individually and on behalf of all other current and former owners or lessees of Affected Vehicles.  Plaintiffs seek damages, injunctive relief, and equitable relief for the conduct of Defendants related to the defeat device, as alleged in this complaint.

**JURISDICTION**

24.     This Court has jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because the Proposed Class consists of 100 or more members; the amount in controversy exceeds $5,000,000, exclusive of costs and interest; and minimal diversity exists. This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

25.     This Court has personal jurisdiction over the Defendants because Defendants regularly do business in the State of Illinois and in this Judicial District and because the Defendants have conspired to commit and have committed the fraudulent acts and omissions complained of herein in this District and have directed their illegal acts towards the citizens of Illinois and caused damages to those citizens.  All Defendants have established minimum contacts with the forum, and the exercise of jurisdiction over them will not offend traditional notions of fair play and substantial justice.

26.     Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to these claims occurred in this District. Moreover, Defendants have marketed, advertised, sold, and leased Affected Vehicles within this District. Venue is also proper pursuant to 18 U.S.C. § 1965.

**PARTIES**

27.     Defendant, Volkswagen Group of America, Inc., is a New Jersey corporation with its principal place of business located in Virginia.  It does business in all 50 states and in the District of Columbia.  At all relevant times Volkswagen designed, manufactured, imported, distributed, sold, warranted, advertised, and marketed the Affected Vehicles with the "CleanDiesel" engine systems and the defeat device throughout the United States.  Volkswagen also developed and disseminated the owner's manuals and warranty booklets, advertisements, and other promotional materials relating to the Affected Vehicles.

28.     Defendant Audi of America, Inc. is a Michigan corporation with its principal place of business located in Virginia.  It does business in all 50 states and in the District of Columbia.  At all relevant times Audi designed, manufactured, imported, distributed, sold, warranted, advertised, and marketed the Affected Vehicles with the "CleanDiesel" engine systems and the defeat device throughout the United States.  Audi also developed and disseminated the owner's manuals and warranty booklets, advertisements, and other promotional materials relating to the Affected Vehicles.

29.     Defendant Volkswagen Aktiengesellschaft is a German corporation with its principal place of business located in Wolfsburg, Germany.  Volkswagen Aktiengesellschaft does business as Volkswagen Group or Volkswagen AG and is the parent corporation of Volkswagen Group of America, Inc. and Audi of America, Inc. At all relevant times Volkswagen AG designed, manufactured, imported, distributed, sold, warranted, advertised, and marketed the Affected Vehicles with the "CleanDiesel" engine systems and the defeat device throughout the United States.

30.     Defendant Robert Bosch GmbH ("Bosch") is a privately held German corporation with its principal place of business located in Stuttgart, Germany.  Bosch designs and

8

manufacturers automotive components and industrial products. At all relevant times, Bosch supplied the illegal defeat devices to Volkswagen for incorporation into the Affected Vehicles.

31. Plaintiff Saskia Bryan is an individual residing in Chicago, Illinois.

32. Plaintiff Andrew Fiske is an individual residing in Chicago, Illinois.

33. Ms. Bryan and Mr. Fiske together purchased a new 2011 Volkswagen Golf TDI from Jennings Volkswagen in 2011. Jennings Volkswagen is an authorized Volkswagen dealer in Glenview, Illinois. Ms. Bryan and Mr. Fiske still own their vehicle which is an Affected Vehicle that was equipped with an emissions control defeat device. The use of the defeat device by Volkswagen has caused Ms. Bryan and Mr. Fiske out-of-pocket loss, future attempted repairs, and diminished the value and performance of their vehicle. Volkswagen knew about and purposefully used the defeat device, but did not disclose the defeat device and its effects to Ms. Bryan and Mr. Fiske, so they purchased their vehicle on the reasonable, but mistaken, belief that their vehicle was "clean", complied with United States emissions standards, was properly EPA certified, and would retain all of its operating characteristics throughout its useful life.

## TOLLING OF THE STATUTE OF LIMITATIONS

### A. Discovery Rule Tolling

34. Plaintiffs and Class members had no way of knowing about Defendants' deception with respect to their "CleanDiesel" engine system. The EPA only discovered the deception after an exhaustive investigation it undertook along with the California Air Resources Board ("CARB"), in which CARB developed an entirely new testing process to expose the defeat device.[5] CARB and the EPA began their investigation into the Volkswagen vehicles in

---

[5] See CARB September 18, 2015 Letter to Volkswagen. Available at http://www.arb.ca.gov/newsrel/in_use_compliance_letter.htm.

May 2014. As recounted in the EPA's NOV, from May 2014 until September 2015, Volkswagen repeatedly and consistently denied that the Affected Vehicles had higher emissions than Volkswagen had certified to the EPA. When confronted with test results showing elevated emissions, Volkswagen stonewalled, claiming that the increased emissions were the product of technical issues and unexpected in-use conditions. Volkswagen even initiated a sham voluntary recall in December 2014 after which they claimed to have fixed the problem that had led to the elevated emissions. But post-recall testing by the EPA revealed that the recalled vehicles still emitted dangerously high levels of nitrogen oxide.

35.     Within the time period of any applicable statutes of limitation, Plaintiffs and Class members could not have discovered through the exercise of reasonable diligence that Defendants were concealing the conduct complained of herein and misrepresenting their true position with respect to the emission qualities of its vehicles.

36.     Plaintiffs and other Class Members did not discover, and did not know of, facts that would have caused a reasonable person to suspect, that Defendants did not report information within their knowledge to federal and state authorities, Volkswagen's dealerships, or consumers; nor would a reasonable and diligent investigation have disclosed that Defendants had information in their possession about the existence of its sophisticated emissions schema and that it opted to conceal that information, which was discovered by Plaintiffs and Class members only shortly before this action was filed.

37.     Therefore, all applicable statutes of limitation have been tolled by operation of the discovery rule with respect to claims as to all vehicles identified herein.

**B.      Fraudulent Concealment Tolling**

38.     All applicable statutes of limitation have also been tolled by Defendants' knowing and active fraudulent concealment and denial of the facts alleged herein throughout the time period relevant to this action.

39.     Defendants falsely represented that the Affected Vehicles complied with federal and state emissions standards, and that they were reputable manufacturers whose representations could be trusted.

**C.     Estoppel**

40.     Defendants were under a continuous duty to disclose to Plaintiffs and the other Class members the true character, quality, and nature of emissions from the vehicles at issue and of those vehicles' emissions systems, and of the compliance of those systems with applicable federal and state law.

41.     Defendants knowingly, affirmatively, and actively concealed the true nature, quality, and character of the emissions systems, and the emissions, of the vehicles at issue.

42.     Defendants were also under a continuous duty to disclose to Plaintiffs and Class members that they had engaged in the scheme complained of herein to evade federal and state emissions and clean air standards, and that they systematically devalued compliance with, and deliberately flouted, federal and state law regulating vehicle emissions and clean air.

43.     Therefore, Defendants are estopped from relying on any statutes of limitations in defense of this action.

## CLASS ACTION ALLEGATIONS

44.     Plaintiffs bring this action on behalf of themselves and as a class action, pursuant to the provisions of Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure, on behalf of the following class (the "Nationwide Class"):

All persons or entities in the United States who are current or former owners or lessees of an "Affected Vehicle." Affected Vehicles include, without limitation, Audi A3 (model years 2010 – 2015), VW Beetle (model years 2012 – 2015), VW Beetle Convertible (model years 2012 – 2015), VW Golf (model years 2010 – 2015), VW Golf Sportswagen (model year 2015), VW Jetta (model years 2009 – 2015), VW Jetta Sportswagen (model years 2009 – 2014), and VW Passat (model years 2012 – 2015).

45.     Plaintiffs also seek to represent the following statewide class or subclass (the "Illinois subclass") defined as

All persons in the State of Illinois who are current or former owners or lessees of an "Affected Vehicle." Affected Vehicles include, without limitation, Audi A3 (model years 2010 – 2015), VW Beetle (model years 2012 – 2015), VW Beetle Convertible (model years 2012 – 2015), VW Golf (model years 2010 – 2015), VW Golf Sportswagen (model year 2015), VW Jetta (model years 2009 – 2015), VW Jetta Sportswagen (model years 2009 – 2014), and VW Passat (model years 2012 – 2015).

46.     Excluded from the Classes are individuals who have personal injury claims resulting from the defeat device in the "CleanDiesel" engine system. Also excluded from the Classes are Defendants and their subsidiaries and affiliates; all persons who make a timely election to be excluded from a Class; governmental entities; and the judge to whom this case is assigned and his or her immediate family. Plaintiffs reserve the right to revise the Class definitions based upon information learned through discovery.

47.     Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claim.

48.     This action has been brought and may be properly maintained on behalf of the Classes proposed herein under Federal Rule of Civil Procedure 23.

49.     **Numerosity**. The members of the Classes are so numerous and geographically dispersed that individual joinder of all Class members is impracticable. The precise number of

Class members is unknown to Plaintiffs, but Plaintiffs are informed and believe that there hundreds of thousands of members. The precise number can be ascertained from Defendants' books and records. Class members may be notified of the pendency of this action by recognized Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, Internet postings, and published notice.

      50. **Commonality and Predominance**. This action involves common questions of law and fact, which predominate over any questions affecting individual Class members, including, without limitation:

    a)  Whether Defendants engaged in the conduct alleged herein;

    b)  Whether Defendants designed, manufactured, marketed, and distributed Affected Vehicles with a defeat device;

    c)  Whether Defendants placed vehicles with defeat devices into the stream of commerce in the United States;

    d)  Whether the "CleanDiesel" engine systems in the Affected Vehicles contains a defect in that it does not comply with U.S. EPA requirements;

    e)  Whether the "CleanDiesel" engine systems in Affected Vehicles can be made to comply with EPA standards without substantially degrading the performance or efficiency of the Affected Vehicles;

    f)  Whether Defendants knew about the defeat device and, if so, for how long Defendants have known;

    g)  Whether Defendants' conduct violates consumer protection statutes, warranty laws, and other laws as asserted herein;

h) Whether Plaintiffs and other Class members overpaid for their Affected Vehicles;

i) Whether Plaintiffs and other Class members are entitled to equitable relief, including, but not limited to, restitution or injunctive relief; and

j) Whether Plaintiffs and other Class members are entitled to damages and other monetary relief and, if so, in what amount.

51. **Typicality**. Plaintiffs' claims are typical of the other Class members' claims because, among other things, all Class members were similarly injured by the Defendants' wrongful conduct as described above.

52. **Adequacy**. Plaintiffs are adequate Class representatives because their interests do not conflict with the interests of the other members of the Class they seek to represent; Plaintiffs have retained counsel competent and experienced in complex class action litigation; and Plaintiffs intend to prosecute this action vigorously. The Class members' interests will be fairly and adequately protected by Plaintiffs and their counsel.

53. **Declaratory and Injunctive Relief**. Defendants have acted or refused to act on grounds generally applicable to Plaintiffs and the other members of the Classes, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the Classes as a whole.

54. **Superiority**. A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiffs and the other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendants, so it

would be impracticable for the members of the Classes to individually seek redress for

Defendants' wrongful conduct.  Even if Class members could afford individual litigation, the

court system could not.  Individualized litigation creates a potential for inconsistent or

contradictory judgments, and increases the delay and expense to all parties and the court system.

By contrast, the class action device presents far fewer management difficulties, and provides the

benefits of single adjudication, economy of scale, and comprehensive supervision by a single

court.

**COUNT I**
**Common Law Fraud**

55.     Plaintiffs reallege and incorporate by reference all paragraphs as if fully set forth

herein.

56.     This claim is brought on behalf of the Nationwide Class.

57.     Volkswagen intentionally concealed and suppressed material facts concerning the

quality of the Affected Vehicles intending and leading Plaintiffs and Class members to believe

that the Affected Vehicles, marketed by Volkswagen as "CleanDiesel" vehicles, possessed

characteristics that they in fact did not possess, namely the combination of low emissions, high

performance and fuel economy, thereby inducing their purchases.  As alleged in this complaint,

Volkswagen engaged in a secret scheme to evade federal and state vehicle emissions standards

by installing a defeat device, software designed to conceal a vehicle's emissions of nitrogen

oxide and other pollutants, in their "CleanDiesel" vehicles.

58.     Volkswagen made numerous intentional misrepresentations regarding the

Affected Vehicles in their advertising, marketing materials, and other standardized statements in

which they claimed the Affected Vehicles were (a) clean and environmentally-friendly, (b)

15

combined low emissions with high performance and strong fuel economy, and (c) met EPA and state emissions standards.

59.     Volkswagen's representation were false and directly contradicted the hidden design of the Affected Vehicles and their actual emissions when operating in ordinary circumstances.  Volkswagen knew the representations were false when it made them and intended the representations to defraud purchasers.

60.     Volkswagen's misrepresentations were uniform across all Class members as the same advertisements were shown to all members of the public generally and the same materials were distributed to customers and potential customers, and all of the materials contained the same standardized statements relating to the Affected Vehicles' emissions, performance, and fuel economy.

61.     Volkswagen had a duty to disclose the full scope and extent of the deceptive emissions scheme because Volkswagen had exclusive knowledge of the Affected Vehicles' actual emissions and had exclusive knowledge as to implementation and maintenance of its scheme.  Volkswagen also had a duty to disclose because Volkswagen knew the facts regarding the scheme were not known to, or reasonably discoverable by, Plaintiffs or Class members. Moreover, Volkswagen made general affirmative representations about the qualities of their vehicles with respect to fuel economy, performance, and emissions standards, starting with references to them as "CleanDiesel" cars.  These representations were misleading, deceptive and incomplete without the disclosure of the fact that Volkswagen had secretly designed and installed defeat device software on the Affected Vehicles that was intended to conceal the vehicles' illegal emission levels from governments, consumers and the public.

62.     Volkswagen's intentionally deceptive conduct induced Plaintiffs and Class members to purchase the Affected Vehicles.  Plaintiffs relied upon Volkswagen's misrepresentations and its concealment of the true facts.  Class members are presumed to have relied upon Defendants' misrepresentations and concealment of true facts because the facts are material to reasonable consumer's decision to purchase the Affected Vehicles.

63.     Because of the concealment and misrepresentations of the true facts, Plaintiffs and Class members have sustained damage, including, lost vehicle value and diminished vehicle quality and utility.  Had Plaintiffs and Class members known about the defeat devices and the unlawful emissions scheme at the time of acquisition, they would not have bought or leased the Affected Vehicles.  Indeed, the Affected Vehicles could not legally have been sold to any consumer if the existence of the defeat devices had been disclosed.  The value of Plaintiffs' and Class members' vehicles has diminished as a result of Volkswagen's fraudulent concealment of its emissions scheme, which has tarnished the Volkswagen and Audi brand names and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

64.     Accordingly, Volkswagen is liable to Plaintiffs and Class members for damages in an amount to be proven at trial.

65.     Volkswagen's conduct was systematic, repetitious, knowing, intentional, malicious, and demonstrated a lack of care and reckless disregard for the rights and interests of Plaintiffs, Class members, the public, and the environment.  Volkswagen's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**COUNT II**
**Conspiracy to Commit Fraud**

17

66. Plaintiffs reallege and incorporate by reference all paragraphs as if fully set forth herein.

67. Plaintiffs bring this claim on behalf of the Nationwide Class.

68. Defendant Bosch conspired with Volkswagen to deceive and defraud Plaintiffs and Class members.

69. As early as 2007, Bosch knew that Volkswagen intended to engage in an illegal scheme to evade federal and state vehicle emissions standards and defraud Plaintiffs and Class members. In response, Bosch conspired with Volkswagen to design, program, and manufacture the defeat device, the crucial piece of technology that Volkswagen used to deceive EPA and state regulators.

70. Knowing that Volkswagen was acting illegally, Bosch agreed to conceal the fact that Volkswagen intended to incorporate Bosch's defeat device into its vehicles and agreed to supply Volkswagen with the defeat devices used in all of the Affected Vehicles. Initially, Volkswagen only installed the defeat device into its Jettas and Jetta Sportswagen models. On information and belief, Bosch continued to work closely with Volkswagen each year as Volkswagen expanded its scheme and incorporated defeat devices into new vehicle models. In the end, Bosch sold approximately 11 million defeat devices to Volkswagen.

71. As set forth above, Volkswagen systematically and repeatedly misrepresented, concealed and suppressed material facts concerning the quality of the Affected Vehicles in order to induce Plaintiffs and Class members to purchase the vehicles, claiming the Affected Vehicles were (a) clean and environmentally-friendly, (b) combined low emissions with high performance and strong fuel economy, and (c) met EPA and state emissions standards.

72.     Bosch joined and facilitated Volkswagen's fraudulent scheme by supplying the critical component Volkswagen needed in order to deceive regulators into allowing the Affected Vehicles to be sold in the United States.  Bosch also facilitated Volkswagen's scheme by concealing the existence of the defeat device even though it was fully aware the Volkswagen intended to and did use the defeat device to deceive regulators, break the law, and defraud customers.

73.     If Bosch had not conspired with Volkswagen by concealing Volkswagen's scheme and providing the critical technology, Volkswagen's heavily polluting diesel vehicles could not have been legally sold in the United States and Plaintiffs and Class Members would not have purchased them. As a direct and proximate result of  Bosch's conduct, then, Plaintiffs and Class members have been damaged in that they purchased a vehicle that was illegal to sell in the first instance, and, even if lawfully sold, was less valuable than what they paid because the Affected Vehicles do not comply with applicable environmental regulations and cost more to operate because, if they are repaired to conform with applicable environmental regulations, they will be less efficient to operate and incur higher fuel costs.

74.     Accordingly, Bosch is liable to Plaintiffs and class members for damages in an amount to be proven at trial.

## COUNT III
## Breach of Express Warranty

75.     Plaintiffs reallege and incorporate by reference all paragraphs as if fully set forth herein.

76.     Plaintiffs bring this claim on behalf of the Nationwide Class.

77.    Volkswagen made numerous representation, descriptions, and promises to Plaintiffs and Class members regarding the performance and emission control of its "CleanDiesel" vehicles.

78.    Volkswagen stated that its vehicles achieved certain fuel efficiency in terms of miles-per-gallon of fuel when tested in accordance with applicable EPA regulations. Those statements create an express warranty that, under EPA test conditions, the vehicle achieved the stated fuel efficiency for purposes of making comparisons with other vehicles.

79.    The testing presupposes that the vehicles comply with all laws and regulations pursuant to applicable automobiles, including environmental regulations.

80.    In fact, had the Affected Vehicles been tested in accordance with EPA fuel efficiency standards while also complying with emissions regulations, they would have achieved significantly lower fuel efficiency than was stated on the EPA mileage sticker on the vehicle.

81.    Further, Volkswagen consistently advertised the "clean", "green", environmentally-friendly qualities of its diesel engines. By doing so, Volkswagen expressly warranted to purchasers of the Affected Vehicles that the vehicles complied with all applicable laws and regulations relating to exhaust emissions as it is not possible for a vehicle to be "green" if it emits more pollutants than allowed by law.

82.    These statements became the basis of the bargain for Plaintiffs and other purchasers of the Affected Vehicles because such statements are among the facts that a reasonable consumer would consider to be material in the purchase of a vehicle.

83.    In fact, under ordinary driving conditions, the Affected Vehicles did not comply with applicable environmental regulations, emitting up to forty times the amount of pollutants allowed. As such, it was unlawful for Volkswagen to sell the Affected Vehicles to the public.

84.     As a direct and proximate result of the foregoing breaches of express warranty, Plaintiffs and Class members have been damaged in that they purchased a vehicle that was illegal to sell in the first instance, and, even if lawfully sold, was less valuable than what they paid because the Affected Vehicles do not comply with applicable environmental regulations and cost more to operate because, if they are repaired to conform with applicable environmental regulations, they will be less efficient to operate and incur higher fuel costs.

### COUNT IV
### Breach of Implied Warranty of Merchantability

85.     Plaintiffs reallege and incorporate by reference all paragraphs as if fully set forth herein.

86.     Plaintiffs bring this claim on behalf of the Nationwide Class.

87.     Section 2-314 of the Uniform Commercial Code provides that, unless disclaimed, there is an implied warranty of merchantability with respect to goods being purchased.

88.     Among the warranties included within the implied warranty of merchantability is that the goods would pass without objection in the trade under the contract description, and are adequately labeled.

89.     As set forth above, the Affected Vehicles would not pass without objection in the trade because the retail sale by the manufacturer of a vehicle that contains a defeat device is unlawful.

90.     In addition, the Affected Vehicles are not adequately labeled because they misstate that the Affected Vehicles comply with EPA regulations, and because the stated gas mileage was not achieved by testing in accordance with EPA testing procedures.

91.     As a direct and proximate result of the foregoing breaches of warranty, Plaintiffs and Class members have been damaged in that they purchased a vehicle that was illegal to sell in

21

the first instance, and, even if lawfully sold, was less valuable than what they paid because the Affected Vehicles do not comply with applicable environmental regulations and cost more to operate because, if they are repaired to conform with applicable environmental regulations, will be less efficient to operate and incur higher fuel costs.

**COUNT V**
**Magnuson-Moss Act (15 U.S.C. §§ 2301, *et seq.*) – Implied Warranty**

92.     Plaintiffs reallege and incorporate by reference all paragraphs as if fully set forth herein.

93.     Plaintiffs brings this claim on behalf of the Nationwide Class.

94.     15 U.S.C. § 2310(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty.

95.     Defendant Volkswagen is a "supplier" and "warrantor" under 15 U.S.C. § 2301(4)-(5).

96.     Plaintiffs and Class members are "consumers" under 15 U.S.C. § 2301(3) because they are persons entitled under applicable state law to enforce against the warrantor the obligations of its express and implied warranties.

97.     The Affected Vehicles are "consumer products" under 15 U.S.C. § 2301(1).

98.     Volkswagen provided Plaintiffs and Class members with an implied warranty of merchantability in connection with the purchase or lease of their vehicles that is an "implied warranty" under 15 U.S.C. § 2301(7).  As part of the implied warranty of merchantability, Volkswagen warranted that the Affected Vehicles would pass without objection in the trade as designed, manufactured, and marketed, and were adequately labeled.

99.     Volkswagen breached these implied warranties, as described above.  Volkswagen is therefore liable to Plaintiffs and the Class pursuant to 15 U.S.C. § 2310(d)(1).

100.    Any effort to limit the implied warranties in a manner that would exclude coverage of the Affected Vehicles is unconscionable, and any such effort to disclaim, or otherwise limit, liability for the Affected Vehicles is null and void.

101.    Plaintiffs and Class members have had sufficiently direct dealings with either Volkswagen or its agents (dealerships) to establish privity of contract.

102.    Moreover, privity is not required here.  Plaintiffs and Class members are intended third-party beneficiaries of contracts between Volkswagen and its dealers, and specifically, of the implied warranties.  The dealers were not intended to be the ultimate consumer of the Affected Vehicles and have no rights under the warranty agreements provided with the Class Vehicles. The warranty agreements were designed for and intended to benefit consumers.

103.    Plaintiffs are entitled to bring this class action pursuant to 15 U.S.C. § 2310(e) and are not required to give Volkswagen notice and an opportunity to cure until such time as the Court determines the representative capacity of Plaintiffs pursuant to Rule 23 of the Federal Rules of Civil Procedure.

104.    The amount in controversy of Plaintiffs' individual claims exceeds the sum of $25.  The amount in controversy of this action exceeds the sum of $50,000, exclusive of interests and costs, computed on the basis of all claims to be determined in this lawsuit.  Plaintiffs, individually and on behalf of the Class, seek all damages permitted by law in an amount to be proven at trial.  In addition, Plaintiffs and Class members are entitled to recover a sum equal to the aggregate amount of costs and expenses (including attorneys' fees) determined by the Court to have reasonably been incurred by Plaintiffs and Class members in connection with the commencement and prosecution of this action.

105.    Further, Plaintiffs and Class members are entitled to equitable relief under 15 U.S.C. § 2310(d)(1).

## COUNT VI
## Unjust Enrichment

106.    Plaintiffs reallege and incorporate by reference all paragraphs as if fully set forth herein.

107.    Plaintiffs bring this claim on behalf of the Nationwide Class

108.    As a result of Defendants' unlawful and deceptive actions described above, Defendants were enriched at the expense of Plaintiffs and the Class members.

109.    Under the circumstances, it would be against equity and good conscience to permit Defendants to retain the ill-gotten benefits it received from Plaintiffs and Class members. This it would be unjust and inequitable for Defendants to retain the benefit without restitution to Plaintiffs and Class members for the monies paid to Defendants for the Affected Vehicles.

## COUNT VI
## Violation of Illinois' Consumer Fraud and Deceptive Business Practices Act 815 ILCS 505/1

110.    Plaintiffs reallege and incorporate by reference all paragraphs as if fully set forth herein.

111.    Plaintiffs bring this claim on behalf of the Illinois subclass.

112.    Section 2 of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ICLS 505/2, prohibits "unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that other rely on upon the concealment, suppression or omission of

such material fact . . . in the conduct of any trade or commerce . . . whether any person has in fact

been misled, deceived or damaged thereby."

113.    Volkswagen is a "person" within the meaning of 815 ILCS 505/1(c).

114.    Plaintiffs and the Illinois subclass are "persons" within the

meaning of 815 ILCS 505/1(c).

115.    Plaintiffs and the Illinois subclass are "consumers" within the meaning of 815

ILCS 505/1(e).

116.    Volkswagen engaged in "trade" or "commerce" within the meaning of 815 ILCS

505/1(f).

117.    Volkswagen sold Affected Vehicles in Illinois and throughout the United States

during the Class Period and these sales meet the definition of "sale" under 815 ILCS 505/1(d).

118.    The Affected Vehicles constitute "merchandise" within the meaning of 815 ILCS

505/1(b).

119.    Volkswagen's advertisements and inducements made within Illinois and

throughout the United States come within the definition of "advertisements" as contained in 815

ILCS 505/1(a).

120.    Volkswagen violated the ICFDBPA when it falsely represented, through

advertising, warranties, and other express representations, that the Affected Vehicles were of

certain quality and had certain characteristics that they were not and did not have.  Specifically,

Volkswagen claimed that the Affected Vehicles were (a) clean and environmentally-friendly, (b)

combined low emissions with high performance and strong fuel economy, and (c) met EPA and

state emissions standards.

121.     Volkswagen violated the ICFDBPA by fraudulently concealing and failing to disclose to Plaintiffs and the Illinois subclass the defects associated with the Affected Vehicles.

122.     Volkswagen violated the ICFDBPA by actively mispresenting or concealing and omitting from, their advertising and marketing and other communications regarding the Affected Vehicles the presence of the illegal defeat device.

123.     The deception, fraud, and concealment alleged occurred in connection with Volkswagen's conduct of trade or commerce in Illinois and throughout the United States.

124.     Volkswagen's intentionally deceptive conduct induced Plaintiffs and Illinois subclass members to purchase the Affected Vehicles.  As a direct and proximate result of Volkswagen's fraudulent scheme, Plaintiffs and Illinois subclass members have been damaged in that they purchased a vehicle that was illegal to sell in the first instance, and, even if lawfully sold, was less valuable than what they paid because the Affected Vehicles do not comply with applicable environmental regulations and cost more to operate because, if they are repaired to conform with applicable environmental regulations, they will be less efficient to operate and incur higher fuel costs.

125.     As a result of Volkswagen's unlawful business practices, Plaintiffs and the Illinois subclass are entitled to an order enjoining such future conduct and such other orders and judgments which may be necessary to disgorge Volkswagen's ill-gotten gains and to restore to Plaintiffs and any Illinois subclass members any money paid for the Affected Vehicles.

**COUNT VI**
**Violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO") 18 U.S.C. § 1962(c).**

126.     Plaintiffs reallege and incorporate by reference all paragraphs as if fully set forth herein.

127.     Plaintiffs brings this claim on behalf of the Nationwide Class.

128.     Volkswagen formed a RICO enterprise with automobile parts supplier Robert Bosch GmbH.  Volkswagen formed the enterprise in order to increase sales in the United States of Volkswagen's heavily-polluting diesel vehicles in spite of strict EPA and state emission standards.  Bosch and Volkswagen collaborated on the design and installation of the defeat device that Volkswagen incorporated into Volkswagen- and Audi-branded vehicles to evade EPA emissions testing.  Volkswagen then continued to drive the enterprise forward by means of an unremitting pattern of false and fraudulent statements to regulators and customers.  As has been described in detail above, these acts of fraud injured Plaintiffs and class members.  Accordingly, Volkswagen and Bosch are liable under 18 U.S.C. § 1962(c).

129.     Volkswagen and Bosch are a "persons" under 18 U.S.C. § 1961(3) as they are entities "capable of holding a beneficial interest in property."

130.     Plaintiffs and Class members are "person[s] injured in his or her business or property" by reasons of Volkswagen's RICO violation within the meaning of 18 U.S.C. § 1964(c).

**The RICO Enterprise**

131.     The following persons, and others presently unknown, have been members of and constitute an "association-in-fact enterprise" within the meaning of RICO, and will be referred to herein collectively as the Enterprise:

a.  Defendant Volkswagen Group of America, who designed, marketed, manufactured, and sold hundreds of thousands of the Affected Vehicles knowing that they contained illegal defeat devices while concealing that fact and repeatedly misrepresenting the

qualities and characteristics of the vehicles in order to deceive Plaintiff and Class members into purchasing the Affected Vehicles.

b.  Defendant Audi of America, who designed, marketed, manufactured, and sold hundreds of thousands of the Affected Vehicles knowing that they contained illegal defeat devices while concealing that fact and repeatedly misrepresenting the qualities and characteristics of the vehicles in order to deceive Plaintiffs and Class members into purchasing the Affected Vehicles.

c.  Defendant Volkswagen AG, who designed, marketed, manufactured, and sold hundreds of thousands of the Affected Vehicles knowing that they contained illegal defeat devices while concealing that fact and repeatedly misrepresenting the qualities and characteristics of the vehicles in order to deceive Plaintiffs and Class members into purchasing the Affected Vehicles.

d.  Defendant Bosch, who collaborated with the Enterprise members to design the illegal defeat device and supplied the defeat devices to the Enterprise, knowing that they were being used to deceive regulators and defraud Plaintiffs and Class members.

e.  Defendants' officers, executives, and engineers, who have collaborated and colluded with each other and with other associates-in-fact in the Enterprise by designing, marketing, manufacturing and selling Affected Vehicles with illegal defeat devices while concealing the illegal defeat devices from Plaintiffs and Class members

132.    The members of the Enterprise associated together for a common purpose, namely increasing United States sales of Volkswagen's heavily-polluting "CleanDiesel" vehicles.  This was a collaborative effort between Volkswagen and Bosch.

133.     Volkswagen and its subsidiaries sell many diesel vehicles in Europe, but only a tiny number in the United States.  In the mid-2000's, Volkswagen set out to change that.  However, it realized that the diesel vehicles it intended to sell in the United States emitted too much pollution to meet EPA emissions standards.

134.     The conventional solution to diesel emissions is the BlueTec system, developed and used by Mercedes, which mixes a chemical known as urea with a vehicle's emissions to neutralize the nitrogen oxide.[6]  They system is effective, but costly, and requires drivers to periodically refill the tank of urea.  In 2007, Volkswagen abandoned the BlueTec system as it was seen as too costly and cumbersome for the United States market.

135.     Rather than sacrifice power or fuel-efficiency to meet emissions standards or rely on the costly BlueTec system, Volkswagen formed the Enterprise with Bosch in order to evade emissions regulations altogether.  Bosch designed the defeat device that, as described above, turns on a vehicle's full emissions control system only when it senses the vehicle is undergoing emissions testing.  Bosch has known since at least 2007 that Volkswagen intended to use, and did use, the defeat device to mislead regulators and the public.  Bosch continued to supply defeat devices and emissions control systems to the Enterprise for use in all of the Affected Vehicles throughout the period at issue.

136.     Meanwhile, Volkswagen undertook a massive publicity and advertising campaign in which it represented to Plaintiffs and Class Members that the Affected Vehicles were "CleanDiesel" cars, and promised that the Affected Vehicles would deliver extraordinarily low emissions, high performance, and high fuel efficiency.  Volkswagen also undertook to mislead

---

[6] Danny Hakim, Aaron M. Kessler, and Jack Ewing. *As Volkswagen Pushed to be No. 1, Ambitions Fueled a Scandal*. New York Times (Sept. 26, 2015), http://www.nytimes.com/2015/09/27/business/as-vw-pushed-to-be-no-1-ambitions-fueled-a-scandal.html.

the EPA and state regulators by certifying that the Affected Vehicles performed to published specifications and that they did not contain defeat devices.

137.    The Enterprise was a collaborative effort that required its members to work together to accomplish their common end of increased sales of the Bosch-supplied vehicles in the United States.  Without the collaboration in design, manufacturing, marketing, and sales, the Enterprise's members would not have succeeded in selling so many of their heavily-polluting diesel vehicles in the United States.  Moreover, the Enterprise's members continued to coordinate as new "CleanDiesel" models were introduced and old models were updated.

138.    At all relevant times, Volkswagen operated, controlled, and managed the Enterprise.  Volkswagen's participation in the Enterprise was necessary for the successful operation of its scheme because the Enterprise provided the means by which Volkswagen could design, manufacture, market, and sell the Affected Vehicles with the concealed defeat devices.

139.    At all relevant times, Bosch operated, controlled, and managed the Enterprise. Bosch's participation in the Enterprise was necessary for the successful operation of its scheme because the Bosch provided the critical technology and expertise that the Enterprise relied upon to carry out its aims.

140.    The Enterprise was engaged in and its activities affected interstate and foreign commerce.

**Pattern of Racketeering Activity**

**Volkswagen's Racketeering Activity**

141.    Volkswagen conducted and participated in the conduct of the affairs of the Enterprise through a pattern of racketeering activity, beginning at the latest in 2009 and continuing to this day.  The pattern consists of repeated violations of the federal mail and wire

30

fraud statutes. These statutes prohibit the use of any interstate or foreign mail or wire facility for the purpose of executing a scheme to defraud, in violation of 18 U.S.C. §§ 1341 and 1343.

142. Volkswagen's fraud scheme, as described in detail in the complaint, consisted of its attempt to intentionally conceal and suppress material facts concerning the quality of the Affected Vehicles in order to lead Plaintiffs and Class members to believe that the Affected Vehicles, marketed by Defendants as "CleanDiesel" vehicles, possessed characteristics that they in fact did not possess, namely the combination of low emissions, high performance and fuel economy, thereby inducing their purchase. As alleged in this complaint, Volkswagen engaged in a secret scheme to evade federal and state vehicle emissions standards by installing a defeat device to conceal the Affected Vehicles' emissions of nitrogen oxide.

143. Volkswagen furthered this scheme to defraud by using the U.S. mail and interstate wire facilities when it transmitted by mail and email communications, writings, including the Volkswagen website, statements to the press, communications with other members of the Enterprise, advertisements and other communications to Volkswagen's customers, including Plaintiffs and Class members.

**A.      Predicate Act No. 1 – April 9, 2008 Application for Emissions Certification**

144. In addition, Volkswagen furthered the scheme to defraud by use of interstate mail and wire facilities when it communicated via mail and email with the EPA. Specifically, on April 9, 2008 Leonard W. Kata, of Volkswagen Group of America sent a letter to David Good of the EPA's Compliance and Innovation Strategies Division. (Attached as Exhibit A). Kata's letter contained an application for Emissions Certification for the 2009 Model Year "CleanDiesel" Volkswagen Jetta and Volkswagen Jetta Sportswagen.

31

145.     The application contains numerous false and misleading statements that Volkswagen made in furtherance of its scheme to defraud Plaintiffs and the Class.  For example, Kata states that "All vehicles within this test group comply with all applicable regulations contained in 40 C.F.R. Part 86 and the compliance statements contained in Sections 8 and 14." Ex. A at 36.  Further the application states "any element of design, system, or emission control device installed on or incorporated in the Volkswagen Group's new motor vehicles . . . will not, to the best of Volkswagen Group's information and belief, cause the emission into the ambient air of pollutants in the operation of its motor vehicles or motor vehicle engines . . . except as specifically permitted by the standards prescribed under section 202 of the Clean Air Act." Ex. A at 32.  Both statements are false and were known to be false at the time they were made.

**B.     Predicate Act No. 2 – July 9, 2009 Application for Emissions Certification**

146.     On July 9, 2009 Leonard W. Kata, of Volkswagen sent a letter to Jim Snyder of the EPA containing Volkswagen's application for Emissions Certification for the 2010 Model Year "CleanDiesel" VW Golf, VW Jetta, VW Jetta Sportwagen, and Audi A3. Attached as Exhibit B).

147.     The application contains numerous false and misleading statements that Volkswagen made in furtherance of its scheme to defraud Plaintiffs and the Class.  For example, Kata states that "All vehicles within this test group comply with all applicable regulations contained in 40 C.F.R. Part 86 and the compliance statements contained in Sections 8 and 14." Ex. B at 26.  Further Volkswagen's application states "any element of design, system, or emission control device installed on or incorporated in the Volkswagen Group's new motor vehicles . . . will not, to the best of Volkswagen Group's information and belief, cause the emission into the ambient air of pollutants in the operation of its motor vehicles or motor vehicle

engines . . . except as specifically permitted by the standards prescribed under section 202 of the Clean Air Act." Ex. B at 22.  Both statements are false and were known to be false at the time they were made.

## C. Predicate Act No. 3 – May 29, 2013 Application for Emissions Certification

148.    On May 29, 2013 Leonard W. Kata, of Volkswagen sent a letter to Jim Snyder of the EPA containing Volkswagen's application for Emissions Certification for the 2014 Model Year "CleanDiesel" VW Passat. (Attached as Exhibit C).

149.    The application contains numerous false and misleading statements that Volkswagen made in furtherance of its scheme to defraud Plaintiffs and the Class.  For example, Kata states that "All vehicles within this test group comply with all applicable regulations contained in 40 C.F.R. Part 86 and the compliance statements contained in Sections 8 and 14." Ex. C at 32.  Further Volkswagen's application states "any element of design, system, or emission control device installed on or incorporated in the Volkswagen Group's new motor vehicles . . . will not, to the best of Volkswagen Group's information and belief, cause the emission into the ambient air of pollutants in the operation of its motor vehicles or motor vehicle engines . . . except as specifically permitted by the standards prescribed under section 202 of the Clean Air Act." Ex. C at 28.  Both statements are false and were known to be false at the time they were made.

## D. Predicate Act No. 4 – March 28, 2014 Application for Emissions Certification

150.    On March 28, 2014 Leonard W. Kata, of Volkswagen sent a letter to Jim Snyder of the EPA containing Volkswagen's Application for Emissions Certification for the model year 2015 "CleanDiesel" Audi A3, VW Passat, VW Golf, VW Jetta, VW Beetle, and VW Beetle Convertible. (Attached as Exhibit D).

151.    The application contains numerous false and misleading statements that Volkswagen made in furtherance of its scheme to defraud Plaintiffs and the Class.  For example, Kata states that "All vehicles within this test group comply with all applicable regulations contained in 40 C.F.R. Part 86 and the compliance statements contained in Sections 8 and 14." Ex. D at 43.  Further Volkswagen's application states "any element of design, system, or emission control device installed on or incorporated in the Volkswagen Group's new motor vehicles . . . will not, to the best of Volkswagen Group's information and belief, cause the emission into the ambient air of pollutants in the operation of its motor vehicles or motor vehicle engines . . . except as specifically permitted by the standards prescribed under section 202 of the Clean Air Act." Ex. D at 38.  Both statements are false and were known to be false at the time they were made.

**Bosch's Racketeering Activity**

152.    Bosch conducted and participated in the conduct of the affairs of the Enterprise through a pattern of racketeering activity, beginning at the latest in 2007 and continuing to this day.  The pattern consists of many, repeated violations of the federal mail and wire fraud statutes.  These statutes prohibit the use of any interstate or foreign mail or wire facility for the purpose of executing a scheme to defraud, in violation of 18 U.S.C. §§ 1341 and 1343.

153.    The scheme to defraud as described in detail in this complaint, consisted of Defendants attempts to intentionally conceal and suppress material facts concerning the quality of the Affected Vehicles in order to lead Plaintiffs and Class members to believe that the Affected Vehicles, marketed by Volkswagen as "CleanDiesel" vehicles, possessed characteristics that they in fact did not possess, namely the combination of low emissions, high performance and fuel economy, thereby inducing their purchase.  As alleged in this complaint,

34

Volkswagen and Bosch engaged in a secret scheme to evade federal and state vehicle emissions standards by installing a defeat device to conceal the Affected Vehicles' emissions of nitrogen oxide.

154.    On information and belief, Bosch furthered this scheme to defraud during the period of 2007 to 2015 by repeatedly using interstate mail and wire facilities to transmit correspondence with Volkswagen regarding the design, programing, manufacture, and implementation of the defeat device.

155.    The above-described acts form a pattern of related and continuous acts of racketeering beginning in at least 2007 and continuing through the present day.  The predicate acts of mail and wire fraud were conducted with the common purpose of defrauding Plaintiffs and Class members by inducing the purchase of Volkswagen's defective vehicles.  The predicate acts had the same participants and the same victims, namely, the EPA, Plaintiffs, and Class members.  The predicate acts were not isolated events.

156.    By reason of and as a result of Defendants' pattern of racketeering activity, Plaintiffs and Class members have been injured in their business and property as were not for Defendants' fraudulent acts, Plaintiffs and Class members would not have bought or leased the Affected Vehicles, as the Affected Vehicles could not legally have been sold.  Further, the value of Plaintiffs' and Class member's vehicles has diminished as a result of Volkswagen's pattern of activity, which has tarnished the Volkswagen and Audi brand names and made any reasonable consumer reluctant to purchase any of the Affected Vehicles, let alone pay what otherwise would have been fair market value for the vehicles.

157.    Accordingly, Defendants are liable to Plaintiffs and class members for damages in an amount to be proven at trial.  Plaintiffs and Class members are entitle to bring this action for

three times their actual damages, as well as injunctive or equitable relief, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c).

**WHEREFORE**, Plaintiffs, individually and on behalf of the Class, respectfully request that the Court enter judgment in his favor and against Defendants, as follows:

A. Certification of the proposed Classes, including appointment of Plaintiffs' counsel as Class Counsel;

B. An order temporarily and permanently enjoining Defendants from continuing the unlawful, deceptive, fraudulent, and unfair business practices alleged in the Complaint;

C. Injunctive relief in the form of a buy back or free replacement program;

D. Costs, restitution, actual damages, punitive damages and disgorgement in an amount to be determined at trial;

E. Revocation of acceptance;

F. Damages under the Magnuson-Moss Warranty Act;

G. Treble or punitive damages as permitted by law;

H. An order requiring Defendants to pay both pre- and post-judgment interests on any amounts awarded;

I. An award of costs and attorneys' fees; and

J. Such other or further relief as may be appropriate.

Plaintiffs hereby demand a jury trial on all issues so triable.

Dated: November 23, 2015 By: */s/ Nathan P. Eimer*
Nathan P. Eimer (IL ARDC No. 00735353)
Email: neimer@eimerstahl.com
Vanessa G. Jacobsen (IL ARDC No. 6243025)
Email: vjacobsen@eimerstahl.com

Alexis G. Chardon (IL ARDC No. 6296556)
Email: achardon@eimerstahl.com
Jacob M. Hamann (IL ARDC No. 6306094)
Email: jhamann@eimerstahl.com
EIMER STAHL LLP
224 South Michigan Avenue, Suite 1100
Chicago, IL 60604
Telephone: (312) 660-7600
Fax: (312) 692-1718

*Attorneys for Plaintiffs and Proposed Classes*